Talin V. Yacoubian (State Bar No. 169439)
Stewart J. Powell (State Bar No. 175226)
YACOUBIAN & POWELL LLP
725 South Figueroa St. Suite 1750
Los Angeles, California 90017
Telephone: (213) 955-7145
Facsimile:   (213) 955-7146

Attorneys for Plaintiff PIERRE AKKELIAN

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PIERRE AKKELIAN, an individual;<br><br>Plaintiff,<br><br>vs.<br><br>SARKIS NOURIAN, an individual; GAGIK GEVORKYAN, an individual; ARMENIAN JEWELLERS ASSOCIATION, a business entity form unknown; and DOES 1 through 10, inclusive<br><br>Defendants | Case No.:  2:17-cv-1446 PSG (Ex)<br><br>[Assigned to Hon. Philip S. Gutierrez]<br><br>**[PROPOSED] FINAL PRE-TRIAL CONFERENCE ORDER PURSUANT TO LOCAL RULE 16-1**<br><br>**PTC Date:  October 29, 2018<br>Time: 2:30 PM<br>Courtroom: 6A**<br><br>**Trial Date:  November 13, 2018** |

i

**TABLE OF CONTENTS**

1. THE PARTIES ............................................................................................... 1

2. FEDERAL JURISDICTION AND VENUE ................................................. 1

3. TRIAL ESTIMATE ....................................................................................... 2

4. THE TRIAL ................................................................................................... 2

5. ADMITTED FACTS ..................................................................................... 2

6. FACTS TO BE CONTESTED ...................................................................... 2

7. CLAIMS AND DEFENSES .......................................................................... 8

     PLAINTIFF ............................................................................................. 8

     DEFENDANT ....................................................................................... 13

8. REMAINING ISSUES TO BE TRIED ....................................................... 13

9. DISCOVERY ............................................................................................... 14

10. DISCLOSURES ......................................................................................... 14

11. WITNESSES .............................................................................................. 14

12. LAW AND MOTION ................................................................................ 15

13. BIFURCATION ......................................................................................... 15

14. ADMISSIONS ............................................................................................ 15

Following pretrial proceedings, pursuant to Rule 16 of Federal Rules of Civil Procedure and Local Rule 16, <u>IT IS ORDERED</u>:

### 1.   **THE PARTIES ARE:**

Plaintiff is Pierre Akkelian ("Plaintiff" or "Mr. Akkelian"). Defendants are Sarkis Nourian ("Nourian"), Gagik Gevorkyan ("Gevorkyan") and Armenian Jewelry Association ("AJA").

Defendants Nourian and Gevorkyan have been served and have appeared.

Defendant AJA has been served but has not appeared and has a default entered against it. [Docket No. 31].

The Pleadings which raise the issues are:
   a. Plaintiff's First Amended Complaint [Docket No. 13]. Plaintiff's second claim for False Light has been dismissed. [Docket No. 22].
   b. Defendant Nourian's Answer to Plaintiff's Complaint [Docket No. 36].
   c. Defendant Gevorkyan's Answer to Plaintiff's Complaint [Docket No. 37].

### 2.   **FEDERAL JURISDICTION AND VENUE:**

Plaintiff commenced this action in the above referenced Court because there exists a complete diversity of citizenship between Plaintiff and the Defendants pursuant to 28 USC § 1332(a), and the matter in controversy well exceeds, exclusive of interest and costs, the jurisdictional sum of $75,000.00.

This Court has personal jurisdiction over Defendants in that Defendants are domiciled in this State, the majority of the members of Defendant AJA are domiciled in this jurisdiction, and because Defendants have managed, distributed and operated their dealings throughout the United States, including those counties comprising the Central District of California of the United States District Court. Plaintiff is a resident of Canada.

**[PROPOSED] FINAL PRE-TRIAL CONFERENCE ORDER**

Venue is proper in this District pursuant to 28 USC §1391(b)(1) and §1391(b)(2) in that Defendant NOURIAN is a citizen of the State of California, and resides in this jurisdiction. The parties previously attempted to arbitrate their dispute in Los Angeles, California. Moreover, Defendant AJA maintains its bank accounts in Los Angeles, California.

Plaintiff is unable to state whether the facts requisite to confer federal jurisdiction and venue are denied or admitted because Defendants Nourian and Gevorkyan refused and failed to participate in the preparation of the within Pretrial Conference Order.

### 3. TRIAL ESTIMATE:

Plaintiff estimates that the trial will last three days.

### 4. THE TRIAL IS TO BE A JURY TRIAL:

Plaintiff requested a jury trial. Defendants also demanded a trial by jury. The Court set the trial to be by jury.

At least seven (7) days prior to the trial date the parties shall file and serve by e-mail, fax, or personal delivery: ( a) proposed jury instructions as required by L.R. 51-1 and (b) any special questions requested to be asked on voir dire.

### 5. ADMITTED FACTS:

Defendants Nourian and Gevorkyan refused and failed to participate in preparation of the within Pretrial Conference Order, as such, there are no admitted facts.

### 6. FACTS TO BE CONTESTED:

The following facts, though stipulated, shall be without prejudice to any evidentiary objection:

1. Plaintiff, Pierre Akkelian is a resident of Canada.
2. Plaintiff, Pierre Akkelian is an Armenian-Canadian jeweler, and founder and president of Canadian Gem, the leading pearl distributor in Canada and USA.
3. Plaintiff, Pierre Akkelian is a bearer of Canadian Jewelry industry's most coveted Canadian Jewellers Association Chairman's award.
4. Plaintiff, Pierre Akkelian founded the Armenian Jewellers Association ("AJA") in 1997.
5. In 2013, Pierre Akkelian was awarded the AJA lifetime achievement award.
6. Plaintiff, Pierre Akkelian was a lifetime honorary member of AJA.
7. Defendant, Sarkis Nourian is a current president of AJA.
8. Defendant, Gagik Gevorkyan is the honorary president of AJA.
9. AJA is established to connect Armenian jewelers around the world and to expand the Armenian jewelry industry.
10. AJA's board is comprised of representatives from all over the world, including the United States, Armenia, Russia, Middle East, Europe, Canada, South America and Australia.
11. AJA constantly organizes special events, exhibitions, conferences, conducts various educational and professional programs, and creates networking and partnership opportunities for its members.
12. In 2009, Pierre Akkelian formed a business venture, with AJA member Gagik Gevorkyan.
13. Pierre Akkelian's and Gagik Gevorkyan's partnership operated for approximately five years and ended in April of 2014.
14. Upon dissolution, the partnership assets were to be distributed between the parties in accordance with their investments.

15. A dispute arose between Pierre Akkelian and Gagik Gevorkyan.
16. In November of 2015, Pierre Akkelian and Gagik Gevorkyan agreed to settle their dispute through binding arbitration which took place in Los Angeles, California.
17. Pierre Akkelian was awarded a judgment in the sum of $105,000.
18. Gagik Gevorkyan refused to pay the judgement.
19. Gagik Gevorkyan, in concert with newly appointed AJA President Sarkis Nourian, embarked on a campaign to malign and slander Plaintiff, using the AJA as a pulpit to wage a vendetta.
20. On October 28, 2016, using the AJA newsletter, Gagik Gevorkyan and Sarkis Nourian published the following:
"During the meeting issue related to inappropriate conduct of one of AJA members Pierre Akkelian (Canada) will also be discussed. Taking in consideration the fact that Mr. Akkelian's actions go against high principles and civil social networking established in AJA it is proposed to expel him from the Association.  A special announcement will be made on this issue.
Mr. Akkelian's destructive activity unfortunately has become a subject for discussion on the sidelines of CIBJO Congress which is taking place in Yerevan, particularly with the Management of the Confederation and was strongly condemned."
21. President of the Confederation confirmed that Pierre Akkelian has not made any derogatory comments regarding Defendants to the CIBJO.
22. AJA board meeting is held in Yerevan, Armenia on October 28, 2016.
23. Sarkis Nourkian and Gagik Gevorkyan published a newsletter on October 30, 2016 and email it to over 3000 recipients.
24. October 30, 2016 newsletter appears online on AJA's website.

[PROPOSED] FINAL PRE-TRIAL CONFERENCE ORDER

25. October 30, 2016 newsletter read: "As reported before, during AJA Annual General Assembly held October 28, 2016 in Yerevan, decision was made to expel Mr. Pierre Akkelian (Canada) from Armenian Jewellers Association. In this regard, a following letter was addressed to him.

    Pierre Akkelian, we are writing this letter to inform you, that you had been expelled from the Armenian Jewellers Association on October 28, 2016 during AJA International Annual General Assembly in Yerevan, when 17 people were elected to AJA International Board.

    All 154 participants of the Assembly, among them AJA representatives and Yerevan Show participants, 17 newly elected members of the AJA International Board, unanimously criticized your habit to discredit and slander by sending numerous letters and emails.

    It has been decided unanimously to address you a strong warning to stop such an inappropriate conduct that defames our Armenian Jewellers Association.

    We are informing you officially that you are no longer a member of AJA due to your unethical misconduct and defamation of AJA members."

26. October 30, 2016 letter revoking Pierre Akkelian's membership at AJA was signed by AJA President Sarkis Nourian.

27. AJA By-Laws govern the relationship between, and the duties, responsibilities, and powers of the parties regarding their membership at AJA.

28. Pierre Akkelian's membership in AJA is governed by By-Laws.

29. Defendants Nourian and Gevorkyan membership in AJA is governed by By-Laws.

30. Pierre Akkelian's First Amended Complaint at Exhibit "C" identifies the By-Laws.
31. Member's revocation, suspension of membership corporate and individual status is governed by Section 11 of the AJA Bylaws.
32. Section 11.2 of the By-Laws reads in pertinent part:
    "The Board may, in its discretion, suspend a member, thereby revoking such member's privileges, for a period not to exceed six (6) months, should in the opinion of the Board such suspension be necessary to conduct an inquiry into the conduct of the member in question."
33. Section 11.3 of the By-Laws reads: "The Board shall afford a member a reasonable right to be heard prior to suspension or revocation of membership."
34. Pierre Akkelian was not given the right to be heard prior to suspension or revocation of his membership.
35. Section 6 of the AJA Bylaws states: "[t]he Board may revoke the membership of a lifetime honorary member for any reason deemed justified by way of a unanimous resolution adopted by the Board."
36. AJA did not conduct formal Board meeting to revoke Pierre Akkelian's membership.
37. There was no unanimous consent of the Board to revoke Pierre Akkelian's membership.
38. AJA Board election as well as the Board composition was not in conformance with the AJA Bylaws
39. There was a lack of required Quorum to revoke Pierre Akkelian's membership.
40. AJA Board did not have the required regional representatives as mandated by Section 14 of the Bylaws.

41. Several AJA Board Members refused to participate in the inappropriate vote.
42. The vote was conducted in a "town hall" fashion instead of by the Board as required by the Bylaws.
43. The news of Plaintiff's expulsion from AJA was circulated to all members of AJA.
44. The news of Plaintiff's expulsion from AJA was published on AJA's website.
45. The published letter falsely stated that all 154 participants unanimously criticized Mr. Akkelian and portrayed Plaintiff in a false light, stating that Plaintiff was expelled due to his unethical misconduct and defamation of AJA members.
46. Defendant Gevorkyan strictly controls and personally approves all published content in the AJA Newsletters and website.
47. AJA newsletters are distributed to over three thousand members worldwide in English and Russian.
48. The articles regarding Pierre Akkelian's expulsion from AJA were printed in media networks outside the ones circulated by AJA.
49. The article regarding Pierre Akkelian's expulsion from AJA was printed in "Asbarez" newspaper serving Armenian-American community of over 500,000 in California and Millions Worldwide.
50. The article regarding Pierre Akkelian's expulsion from AJA was printed in "Golos Armenii" online news.
51. The statements in the newsletter are false, and are intended to harm Plaintiff's reputation and to ridicule and lower him in the opinion of the community and to deter third persons from associating or dealing with him.

52. Defendants' accusations upon which they based Plaintiff's expulsion, are false.
53. Pierre Akkelian writes to 30 of his CIBJO colleagues a congratulatory letter to convey regrets: "it pains me to no end for not being there to share the joy of being with you on such a historic occasion" and wishing his foreign colleagues "I wish all of you attending the Congress the best of success and joyful sojourn in Armenia".
54. Defendants publish an article in the AJA newsletter on December 19, 2016, inviting all AJA members to influence Plaintiff to abide by the alleged Court orders entered against Plaintiff in connection with his partnership with Gevorkyan.
55. The viability and profitability of Pierre Akkelian is based upon monies and revenue earned from Plaintiff's name and his brand, locally and internationally.
56. On February 22, 2017, Pierre Akkelian filed this lawsuit.

### 7. CLAIMS AND DEFENSES:

**Plaintiff Pierre Akkelian**

**A. Plaintiff's Claims**

Plaintiff Pierre Akkelian plans to pursue the following claims against Defendants:

- Claim 1: Defamation Per Se.
- Claim 2: Plaintiff's second claim for False Light has been dismissed by Plaintiff.
- Claim 3: Breach of Bylaws.

Prayer for Relief:

### 1. Compensatory Damages

The viability and profitability of Plaintiff is based upon monies and revenue earned from Plaintiff's name and his brand, locally and internationally. Plaintiff has dedicated his entire life to establish a stellar reputation in the jewelry industry. Plaintiff seeks monetary damages, in an amount of Five Hundred Thousand ($500,000) dollars, plus prejudgment interest based on the loss of and damage to his exemplary professional reputation, and creditworthiness, as well as damages sustained as a result of revocation of Plaintiff's membership in AJA, and his expulsion from the AJA board.

### 2. Punitive Damages

Plaintiff will seek an award of punitive damages by such amount as determined by the jury's sound judgment and discretion to fairly and sufficiently punish Defendants for their egregious conduct and will deter Defendants and other people from acting in a similar tortious manner in the future. *Lawnwood Medical Center Inc. v. Sadow*, 43 So. 3d 710 (Fla. 4th Dist. 2010.)

### 3. Claim of Injunction

By his lawsuit, Plaintiff will seek that Defendants be enjoined from publishing, making, distributing, or publicly displaying any statement, comment, article or publication of a derogatory nature about Plaintiff. Plaintiff also demands an apology from Defendants.

In addition, Plaintiff demands restitution of all gains, profits and advantages obtained by Defendants, and each of them, as a result of their wrongful and unlawful conduct.

///
///

**B. <u>Elements Required to Establish Plaintiff's Claims are:</u>**

**Claim 1: Defamation Per Se**

To establish claim for defamation per se, Plaintiff must establish that Defendants (1) made a publication of defamatory, false, and unprivileged statements, (2) that the person [Plaintiff] about whom the defamatory statement is made must be 'damaged' by the statement, and (3) that such statement ha[d] a natural tendency to injure or that it cause[d] special damage.

Cal. Civ. Code §45; *Thomas v. Jacksonville Tel., Inc.,* 699 So.2d 800 (Fla. 1st DCA 1997); *Berger v. Devereaux*, 2008 U.S. Dist. LEXIS 51816 (Cal. C.D. 2008); *Taus v. Loftus,* 40 Cal.4th 683, 720, 54 Cal. Rptr. 3d 775, 151 P.3d 1185 (2007); *Ringler Associates v. Maryland Cas. Co.,* 80 Cal.App. 4th 1165, 1179, 96 Cal. Rptr. 2d 136 (2000); Judicial Council of California, Civil Jury Instructions, CACI 1700.

**Claim 3: Breach of Bylaws**

To establish a breach of Bylaws [contract] claim, Plaintiff must first establish that bylaws of a voluntary unincorporated association constitute a contract between the association and its members, i.e. the existence of a valid contract; plaintiff's performance or excuse for non-performance; a breach by the defendant; and damages as a result of the breach.

*American Soc. of Composers, Authors and Publishers v. Superior Court of Los Angeles County*, 207 Cal.App.2d 676, 689, 24 Cal.Rptr. 772, 780 (1962); *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 140 (Del. Ch. 2003); *Acoustics, Inc. v. Trepte Construction Co.*, 14 Cal.App.3d 887, 913 (1971); Judicial Council of California, Civil Jury Instructions, CACI 300, 303.

**C. <u>The Key Evidence Plaintiff Relies on for Each of the Claims is:</u>**

**1. Claim 1: Defamation Per Se:** Plaintiff will introduce the following categories of evidence establishing that Defendants Nourian and Gevorkyan embarked on a campaign to malign and slander Plaintiff, using the AJA's platform:

- Evidence showing defamatory statements published by Defendants concerning Plaintiff in AJA newsletters;
- AJA's October 28, 2016 newsletter;
- AJA's October 30, 2016 newsletter;
- Evidence showing articles published by Defendants concerning Plaintiff in in the "Asbarez" newspaper and "Golos Armenii" online news;
- Evidence showing letters written and published by Defendants concerning Plaintiff's expulsion from the AJA board;
- AJA's board meeting minutes;
- Arbitration award in GemEst Co. matter;
- Evidence showing Plaintiff's mitigation of damages.

    **2.**    **Claim 3: Breach of By-Laws:** Plaintiff will introduce the following categories of evidence establishing that Defendants Nourian and Gevorkyan breached the AJA By-laws by failing to honor any of its terms, including but not limited to, elections, meetings, board compositions, imposition of discipline, and unlawfully expelled Plaintiff without opportunity for a hearing by a lawfully elected Board:

- Bylaws of the Armenian Jewellers Association ("AJA");
- Evidence establishing AJA's business structure;
- Evidence establishing procedures for expelling honorary board members;
- Meeting minutes of AJA Annual General Assembly held on October 28, 2016 in Yerevan, Armenia;
- Evidence related to AJA's annual assembly and Board election procedures;
- Defendants' communications concerning Plaintiff.

    **3.**    **Compensatory Damages.** In addition to the evidence offered above, Plaintiff will introduce the following categories of evidence to establish that the statements published by Defendants concerning Plaintiff were defamatory,

published with a conscious disregard of the rights of Plaintiff, and were made with the intent to injure Plaintiff's exemplary professional reputation.

The evidence will focus on the egregiousness of Defendants' conduct and the need to deter Defendants and others from making such defamatory statements about Plaintiff. Plaintiff may also present testimony and other evidence that Defendants made these statements intending to cause harm to Plaintiff's business interests, and having reason to know that the public and prospective and actual clients as well as business partners, venturers, and associates of Plaintiff would rely on these defamatory statements and cease doing further business with Plaintiff as a result. Plaintiff will also introduce the following:

- Evidence showing defamatory statements published by Defendants concerning Plaintiff in AJA newsletters;
- AJA's October 28, 2016 newsletter;
- AJA's October 30, 2016 newsletter;
- Evidence showing articles published by Defendants concerning Plaintiff in in the "Asbarez" newspaper and "Golos Armenii" online news;
- Evidence showing letters written and published by Defendants concerning Plaintiff's expulsion from the AJA board;
- Evidence that Defendants used AJA platform as a pulpit to wage a vendetta, and to harass, defame and harm Plaintiff;
- Testimony from Plaintiff and industry professionals that a jeweler's reputation for honesty is the essence of a successful business;
- Testimony from Plaintiff and his colleagues about Plaintiff's reputation and standing amongst his business colleagues.

    **Defendants Nourian and Gevorkyan:**

    **B. Defendants' Claims:**

Defendants have pleaded twenty-six affirmative defenses each, see Dkts. 36 and 37, however, Defendants failed to participate in or cooperate with the preparation of the pre-trail documents in violation of the spirit of this Court's Order, and thus Plaintiff is unaware which affirmative defenses Defendants intend to pursue.

    **Third Party Plaintiffs and Defendants:**

None.

**8.    REMAINING ISSUES TO BE TRIED:**

In view of the elements required to establish the claims, and affirmative defenses, the following issues remain to be tried:

1. Plaintiff takes the position that: (1) the statements published by Defendants are false and defamatory; (2) Defendants published these statements intentionally to damage Plaintiff's reputation; (3) the publication of these statements was a result of Plaintiff's and Defendant Gevorkyan's partnership dissolution; (4) the statements published about Plaintiff were sent to thousands; (5) Plaintiff's reputation was discredited; (6) Plaintiff is entitled to recover $500,000 from Defendants.
2. Whether publication of defamatory statements was innocent;
3. Whether Defendants' conduct was willful;
4. Whether Plaintiff failed to mitigate any damages;
5. Whether Plaintiff's membership was revoked in accordance with By-Laws;

[PROPOSED] FINAL PRE-TRIAL CONFERENCE ORDER

6. If liability is established, the appropriate level of damages to reimburse Plaintiff;

7. Whether Defendants conduct warrants award of punitive damages to Plaintiff.

**9. DISCOVERY:**

Due to Defendants' refusal and failure to participate in this litigation, the following discovery remains outstanding:

    a. Defendant Gevorkyan's Responses to Plaintiff's First Set of Requests for Production of Documents and Plaintiff's First Set of Interrogatories;

    b. Defendant Nourian's Responses to Plaintiff's First Set of Requests for Production of Documents and Plaintiff's First Set of Interrogatories;

    c. Deposition of Defendant Gevorkyan;

    d. Deposition of Defendant Nourian.

**10. DISCLOSURES UNDER F.R.CIV.P. 26(A)(3):**

The initial disclosures under Rule 26(a)(3) of the Federal Rules of Civil Procedure have been made. Defendants failed to participate in preparation of pre-trial documents.

Plaintiff's exhibit list has been filed under separate cover as required by Local Rule 16-6.1.

Defendants did not object to any of Plaintiff's exhibits. Defendants did not file an exhibit list.

**11. WITNESSES:**

Plaintiff's witness list has been filed with the Court.

Defendants did not file a witness list.

Only the witnesses identified in the witness lists will be permitted to testify

14

1  (other than solely for impeachment).  Plaintiff filed motions *in limine* to exclude
2  any subsequently named witnesses of Defendants.
3        Plaintiff does not intend to present evidence by way of deposition testimony,
4  and no depositions will be lodged with the Clerk as required by Local Rule 32-1.

### 12.  LAW AND MOTION:

The following law and motion matters and motions *in limine*, and no other are pending or contemplated:

    a.  Plaintiff's Motion *in Limine* No. 1: To Exclude Evidence and Witnesses Not Produced or Named in Discovery.

### 13.  BIFURCATION:

Bifurcation of the following issues for trial is ordered:  None.

### 14.  ADMISSIONS:

The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues remaining to be litigated, this Final Pretrial Conference Order shall supersede the pleadings and govern the course of the trial of this cause, unless modified to prevent manifest injustice.

Dated: _____, 2018     _____
                                                       UNITED STATES DISTRICT JUDGE
                                                       HON. PHILIP S. GUTIERREZ

**Approved as to form and content.**

Yacoubian & Powell LLP

/s/ Talin V. Yacoubian
Talin V. Yacoubian
Attorneys for Plaintiff
PIERRE AKKELIAN